UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAWRENCE J. SANDOVAL,<br><br>                   Petitioner,<br><br>vs.<br><br>JACK PALMER, et al.,<br><br>                   Respondents. | Case No. 3:09-cv-00081-RCJ-VPC<br><br>ORDER |

This is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a Nevada state prisoner (ECF #7). Now before the court is respondents' answer to the remaining grounds for relief (ECF #26). Petitioner filed a reply to the answer (ECF #37).

**I. Procedural History and Background**

On February 4, 2005, the State charged petitioner with 72 counts of sexual assault with a minor under 16 years of age, 30 counts of sexual assault, and 12 counts of statutory sexual seduction. Exh. 2.[1] An amended information filed November 16, 2005 also added one count of child abuse. Exh. 13. Petitioner was convicted, pursuant to a jury trial, of 31 counts of sexual assault with a minor under sixteen years of age, 27 counts of sexual assault, and one count of child abuse. Exh. 33. He was sentenced to 31 concurrent terms of 20 years to life in prison, 27 concurrent terms of ten years to life, and a consecutive term of one to six years. *Id*.

---

[1] Exhibits 1-100 are exhibits to respondents' answer (ECF #26) and may be found at ECF #s 27-31.

Petitioner appealed. Exh. 27. On August 7, 2007, the Nevada Supreme Court affirmed in part and reversed in part his convictions. Exh. 49. The Nevada Supreme Court determined that insufficient evidence supported six counts of sexual assault with a minor under the age of 16 as well as six counts of sexual assault, and therefore, it reversed the convictions for those counts. *Id*. The Nevada Supreme Court rejected petitioner's remaining claims. *Id*.

Petitioner filed a state postconviction petition for writ of habeas corpus on December 28, 2007. Exh. 53. The state district court denied the petition. Exh. 64. Petitioner filed an untimely appeal, which the Nevada Supreme Court dismissed on that basis. Exh. 71.

On January 27, 2009, petitioner dispatched his federal habeas petition (ECF #7). Pursuant to petitioner's response to a show-cause order, this court found some of petitioner's claims unexhausted and directed petitioner to either file a motion to dismiss the petition in whole or in part, or stipulate that his unexhausted claims would be procedurally barred in state court (ECF #17). Petitioner moved for dismissal of the unexhausted claims without prejudice and a stay (ECF #18). This court dismissed all but portions of three claims and granted the stay on December 8, 2009 (ECF #19).

On January 25, 2010, petitioner filed a second state postconviction petition. Exh. 84. The Nevada Supreme Court affirmed the dismissal of the petition as procedurally barred on November 1, 2010, and remittitur issued on January 3, 2011. Exhs. 96, 100.

On July 5, 2011, this court granted petitioner's motion to reopen the case (ECF #24). As petitioner had not filed a motion to amend, this court ordered respondents to respond to the three remaining claims: ground 1 – challenge to the sufficiency of the evidence; ground 2 – claims of prosecutorial misconduct alleging that the prosecutor improperly commented that petitioner's two daughters were lying to protect their father and that the prosecutor improperly commented that the victim had testified truthfully; and ground 7 – that petitioner's confession was involuntary because he was under the influence of drugs and was sleep-deprived (ECF #24, pp. 2-3).

Respondents now answer the remaining portions of grounds 1, 2, and 7 (ECF #26).

## II. Legal Standards

### A. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams*

*v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Instant Petition**

**Ground 1**

In the remaining portion of ground 1, petitioner alleges that his due process rights under the Fifth, Sixth and Fourteenth Amendment have been violated because insufficient evidence supported his conviction (ECF #7, pp. 3-9). He mainly claims that, aside from his confession, which was improperly admitted, he was convicted solely on the victim's testimony. *Id*.[2]

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive

---

[2] The court notes that respondents argue, in the alternative, that the remaining portions of grounds 1 and 2 are unexhausted (ECF #26, pp. 4-5); however, as discussed herein, the grounds shall be denied on their merits. 25 U.S.C. § 2254(b)(2).

-4-

elements of the criminal offense as defined by state law." *Id*. at 324 n. 16.

In addressing the sufficiency of the evidence claim, on appeal of the denial of the first state habeas petition, the Nevada Supreme Court reasoned:

> [Petitioner] next argues that there was insufficient evidence to support his convictions. "The standard of review for sufficiency of the evidence upon appeal is whether the jury, acting reasonably, could have been convinced of the [petitioner's] guilt beyond a reasonable doubt." We have held that a child victim is not required to "specify exact numbers of incidents, but there must be some reliable indicia that the number of acts charged actually occurred," and that such reliable indicia could be established if the child testified that "the incidents occurred every weekend for the period of time [that petitioner] resided in the family home or that [petitioner] assaulted her nearly every weekend." That is precisely the kind of testimony the victim gave in regard to these counts: she specified the acts that occurred and testified that each of the acts occurred on a weekly basis during the given timeframes for these counts. The victim's testimony that [petitioner] hit her with his fists when he was angry with her was sufficient to support a conviction of child abuse. Thus, the evidence was sufficient to support [petitioner's] convictions of sexual assault of a child under the age of 16 as charged in counts 13, 16, 19, 20, and 52 to 72, his convictions of sexual assault as charged in counts 75, 79 to 90, and 94 to 99, and his conviction of child abuse as charged in count 115.
>
> However, we agree with [petitioner] that the evidence was insufficient to support his convictions of sexual assault of a child under the age of 16 as charged in counts 37 to 42 and his convictions of sexual assault as charged in counts 76 to 78 and 91 to 93. Although the victim previously testified that she had been subjected to sexual intercourse, fellatio, and cunnilingus, the prosecutor's asking her if "this stuff" continued from Easter 2003 to July 2003 and the victim's responding "Yes" was insufficient to support convictions on counts 37 to 42. Similarly, the prosecutor's asking the victim if "things" continued to happen from mid-April 2004 to May 2004 and the victim's answering "Yes" was insufficient to support convictions on counts 76 to 78. The State must establish which particular acts occurred, not simply establish that unspecified acts continued. The victim testified that she was subjected to sexual intercourse, cunnilingus, and fellatio between approximately August 2004 and Halloween 2004, but was not asked how often that conduct occurred; this was insufficient to support convictions on counts 91 to 93. We therefore conclude that counts 37 to 42, 76 to 78, and 91 to 93 must be reversed.

Exh. 49 at 3-5 (internal citations omitted).

Here, sufficient evidence supports petitioner's convictions. The record demonstrates that beginning in August or September 2002, petitioner had sexual intercourse and oral sex with his then fourteen-year-old step-daughter, forcibly and against her will, about once each weekend. *See* Exh. 21 at 10-89. The victim provided details about several specific incidents and testified that the systematic abuse continued until January 2005, when the victim and her three younger half-siblings moved in with her grandfather, her mother's father. *See, e.g., id.* at 10-12, 13-14, 23-25, 86. The victim's mother and petitioner had separated in 2002, and the victim's mother was incarcerated for portions of time between

2002 and 2005. Exh. 20 at 61-66. For part of this time period, the victim lived with petitioner's mother, petitioner and the three younger siblings at petitioner's mother's house, whom she considered her grandmother. After her grandmother died, the victim was expected to care for the younger children, cook, clean and keep up the household; she was not always enrolled in school. Exh. 21 at 67, 79-80. The victim testified that when petitioner was angry with her he would strike her in the back of her head with his fist and that he threatened to "beat [her] ass" if she told anyone about the sexual abuse. *Id*. at 33, 87-88.

Moreover, the Nevada Supreme Court reversed petitioner's convictions on sexual assault counts that spanned time periods about which the Court concluded victim's testimony was insufficient to establish that particular acts occurred and with what frequency. Exh. 49 at 4-5. The Nevada Supreme Court reversed petitioner's convictions on counts 37 to 42, 76 to 78, and 91 to 93 on that basis. *Id*. The Nevada Supreme Court's decision was a reasonable application of *Jackson v. Virginia*. 28 U.S.C. § 2254(d).

Accordingly, petitioner has failed to demonstrate that the state district court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 1 is, therefore, denied.

**Ground 2**

In the remaining claims in ground 2 petitioner asserts that his Fifth, Sixth and Fourteenth Amendment rights were violated by prosecutorial misconduct when the prosecutor improperly commented that petitioner's two daughters were lying to protect their father and improperly commented that the victim had testified truthfully (ECF #7, pp. 10-14). The Nevada Supreme Court denied on appeal the claim that "the State's misconduct at trial amounted to a denial of due process and deprived [petitioner] of a fair and impartial trial:

> Finally, [petitioner] argues that the prosecutor committed misconduct during closing argument. A prosecutor's comments should be considered in context, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. [Petitioner] did not object to any of the comments he now cites as improper; therefore, we review them for plain error. We conclude that none of the comments constituted plain error.

Exh. 49 at 5.

In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It is "not enough that the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutor's comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (*quoting Darden*, 477 U.S. at 181). The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).

Petitioner first objects that the prosecutor improperly argued that his daughters lied when they testified. The prosecutor stated during her rebuttal closing arguments: "[Petitioner's two daughters] come in and try to protect their dad and conveniently communicate to you that grandma never slept, people were always there . . . ." Exh. 25 at 9-10. This court agrees with respondents that the prosecutor was exploring the weakness of the daughters' testimony by arguing that the assertion that the sexual assaults could never have happened because over a period of years the grandmother was never asleep lacked common sense. Moreover, the prosecutor made this statement in direct response to defense counsel's improper statement during his closing: "I can guarantee you that there was absolutely nothing going on in that house when Grandma Josephine was alive that was inappropriate. Certainly nothing as horrible as the sexual abuse of [the victim] by [the petitioner]." Exh. 24 at 77-78. Counsel's impossible "guarantee" was an improper statement; the prosecutor's intimation that testimony regarding a person never sleeping was not credible was not an improper observation and did not implicate petitioner's due process rights.

Petitioner also objects that the prosecutor improperly vouched for the victim's testimony. The prosecutor argued on closing that the victim testified with "all the absolute appropriate emotion and detail." Exh. 25 at 13. The prosecutor further argued that the victim's testimony was consistent and included credible details. *Id*. at 12-13.

"Improper vouching occurs when the prosecutor places the prestige of the government behind the witness by providing personal assurances of the witness's veracity." *U.S. v. Stinson*, 647 F.3d 1196, 1212 (9th Cir. 2011) quoting *U.S. v. Wright*, 625 F.3d 583, 610 (9th Cir.2010). The court concludes that the prosecutor's observations regarding consistent or emotionally appropriate testimony do not constitute impermissible vouching. A jury properly considers witnesses' demeanor when assessing credibility.

Petitioner has failed to demonstrate that the Nevada Supreme Court's conclusion that neither of the asserted improper comments by the prosecutor constituted plain error is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 2 is denied.

**Ground 7**

Petitioner claims that his Fifth, Sixth and Fourteenth Amendment rights were violated because his confession was involuntary as he was under the influence of drugs and was sleep-deprived (ECF #7, pp. 33-36).

In rejecting this claim in petitioner's direct appeal, the Nevada Supreme Court explained:

> [Petitioner] argues that statements he made to [the interviewing detective] should not have been admitted because the statements were involuntary, in that [petitioner] was under the influence of methamphetamine and was sleep-deprived when questioned. [Petitioner] did not file a motion to suppress his statements, did not object at trial to admission of the videotape of the interrogation, and did not object at trial to [the detective's] testimony about the interrogation on the grounds that his statements were involuntary. We therefore review admission of this evidence for plain error. We conclude there was no error. When questioned by [the detective, petitioner] denied using drugs at the present time. [The detective] testified that [petitioner] did not appear to be under the influence of methamphetamine. Our review of the transcript of the interrogation indicates that [petitioner] was coherent and understood what was going on. Accordingly, there was no plain error in admitting his statements.

Exhibit 49 at 1-2 (internal citations omitted).

The fact that a suspect is under the influence of drugs or medication is irrelevant if the suspect's statement was "the product of a rational intellect and a free will." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (internal citations and quotations omitted); *see also United States v. George*, 987 F.2d 1428, 1430–31 (9th Cir.1993); *United States v. Lewis*, 833 F.2d 1380, 1384–85 (9th Cir.1987). A defendant's

-8-

waiver of his *Miranda* rights is valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444, 475). The totality of circumstances to be considered when analyzing the voluntariness of a confession includes "both the characteristics of the accused and the details of the interrogation." *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir.1992) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)), overrruled on other grounds by *United States v. Kim*, 105 F.3d 1579, 1581 (9th Cir.1997). "If by reason of mental illness, use of drugs, or extreme intoxication, the confession in fact could not be said to be the product of a rational intellect and a free will ... it is not admissible and its reception in evidence constitutes a deprivation of due process." *Gladden v. Unsworth*, 396 F.2d 373, 380–81 (9th Cir. 1968).

The record reflects that petitioner testified at trial that despite the fact that he told the detective that he was not under the influence of any drugs, he was in fact high on methamphetamine and sleep-deprived. Exh. 24 at 16-18. He repeatedly testified that he did not know why he falsely confessed to having sex with the victim. *Id*. at 24. He testified that he did not really recall any of the interview. *See, e.g., id.* at 18-22.

However, the detective who interviewed petitioner testified that petitioner voluntarily scheduled the interview and, after he called and rescheduled once, freely arrived at the detective's office for the interview. Exh. 22 at 30-31. The detective testified that petitioner was free to leave the interview at any time, which lasted about 50 minutes, and that she read him his *Miranda* rights at the outset of the interview. *Id*. at 32. She stated that she asked petitioner if he still used drugs or if there were drugs in the home and he denied both. *Id*. at 39. The detective testified that she has observed individuals under the influence of drugs and specifically under the influence of methamphetamine. *Id*. at 40. She stated that petitioner did not appear to be under the influence of methamphetamine because such persons "tend to be delusional, paranoid, have trouble answering a question . . . . are very fidgety . . . . have trouble focusing their speech and behavior is erratic," and petitioner did not exhibit any such behavior. *Id*. at 41. The detective testified that petitioner repeatedly denied any wrongdoing, but after she told him there was other physical evidence against him–which was false–he admitted that he had had sex with the victim. *See* Exh. 24 at 17-20. He stated that they had had sex about four or five times and that it

was the victim who initiated the sexual contact. *Id*. at 17-18. He stated specifically that he would wake up in the night and discover the victim in his bed, that at one point he was locking his bedroom door to keep her out but she had a key, and that they had consensual oral sex and intercourse. *Id*. at 17-28.

Even assuming, *arguendo*, that petitioner had used methamphetamine before the interview, the record supports the Nevada Supreme Court's conclusion that, based on its review of the transcript of the interrogation and the trial testimony, petitioner was coherent and understood what was going on, and therefore, there was no plain error in admitting his statements. Petitioner has thus failed to demonstrate that the Nevada Supreme Court's determination is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 7 lacks merit and is denied.

The petition is thus denied in its entirety.

### III. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**IV. Conclusion**

   **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF #7) is **DENIED IN ITS ENTIRETY**.

   **IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

   **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

   Dated:  This 24th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE